UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SAMATHA F.[1] ,

        Plaintiff,

  v..                                        Civil Action 2:23-CV-2480
                                           Chief Judge Algenon L. Marbley
                                           Magistrate Judge Chelsey M. Vascura

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

# REPORT AND RECOMMENDATION

Plaintiff, Samantha F., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Social Security Period of Disability Benefits, Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI"). This matter is before the undersigned for a Report and Recommendation ("R&R") on Plaintiff's Statement of Specific Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 14), Plaintiff's Reply to Defendant's Memorandum in Opposition (ECF No. 15), and the administrative record (ECF No. 7). For the reasons that follow, the undersigned **RECOMMENDS** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## I. BACKGROUND

Plaintiff protectively filed DIB and SSI applications on December 28, 2018, alleging that she became disabled March 18, 2009. (R. 3446.) After Plaintiff's applications were denied initially and on reconsideration, a telephone hearing was held on September 11, 2020, before Administrative Law Judge Noceeba Southern ( "ALJ"), who issued an unfavorable determination. Plaintiff eventually filed suit in this Court for review of that decision, and the matter was remanded under sentence four of 42 U.S.C. § 405(g). Upon remand, the Appeals Council directed the ALJ to obtain supplemental vocational evidence and to reevaluate Plaintiff's date last insured. The ALJ subsequently held a telephone hearing on January 12, 2023, at which the Plaintiff, who was represented by counsel, testified. A vocational expert ("VE") also appeared and testified. On April 17, 2023, the ALJ again issued an unfavorable determination (R. 3446–75), and it became final after the Appeals Council declined review.

Plaintiff seeks judicial review of the ALJ's second unfavorable determination. Plaintiff asserts two contentions of error: (1) the ALJ erred when assessing limitations opined by her treating physician Dr. Douglas Woo; and (2) the ALJ erred when assessing prior administrative findings made by state agency reviewing physicians. The undersigned finds that Plaintiff's first contention of error has merit.

## II. THE ALJ's DECISION

The ALJ issued her decision on April 17, 2023, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 3446–75.) The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2022.

(*Id.* at 3450.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 18, 2009, the alleged onset date. (*Id.*) At step two, although Plaintiff has alleged disability since March 18, 2009, the ALJ found that Plaintiff did not have any medically determinable impairments prior to February 21, 2014. (*Id.*) The ALJ then found that since February 21, 2014, Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; osteoarthritis of the right knee; de Quervain's tenosynovitis; fibromyalgia with chronic fatigue; bradycardia, status post pacemaker implantation; narcolepsy; Barrette's esophagus; migraine headaches; obesity; anxiety, depression; and posttraumatic stress disorder. (*Id.* at 3450–51.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1. Is the claimant engaged in substantial gainful activity?

    2. Does the claimant suffer from one or more severe impairments?

    3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

    4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

    5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.

(*Id.* at 3451–56.)

>The ALJ then set forth Plaintiff's residual functional capacity ("RFC")[3] as follows:
>
>After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except frequent ramps or stairs; avoiding ladders, ropes, or scaffolds; frequent balancing; occasional stooping, kneeling, crouching, and crawling; frequent handling and reaching with the bilateral upper extremities; avoiding concentrated exposure to extreme loud noises, vibrations, and extreme bright lights; avoiding hazards including heavy machinery, moving machinery, and unprotected heights. Mentally the claimant should be able to tolerate simple routine tasks with no strict production quotas or fast pace; would benefit from a position that does not require tandem work or over the shoulder supervision; she should be able to tolerate occasional but superficial interaction with coworkers, supervisors, and the public (superficial being that which is beyond the performance of job duties and job functions for a specific purpose and a short duration); should be able to tolerate a position that requires no more than occasional changes and occasional decision making, with few detailed instructions; and she will benefit from changes being well explained and supervisory support during changeovers. Additionally, the claimant will benefit from a sit/stand option every three hours stand/sitting 3-4 minutes on task, and will otherwise be off task 8% of the work day.

(*Id.* at 3456–73.)

The ALJ determined at step four that Plaintiff had no past relevant work. (*Id.* at 3473.) At step five, the ALJ, relying on testimony from a VE, found that jobs existed in significant numbers in the national economy that an individual with Plaintiff's age, education, work experience, and residual functional capacity could perform including such representative occupations as Office Helper/Clerical Assistant, Mail Room Clerk and Cafeteria Attendant. (*Id.* at 3473–74.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act from March 18, 2009, through the date of the decision. (*Id.* at 3474.)

---

[3] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV. ANALYSIS

As explained above, Plaintiff contends that the ALJ erred when assessing medical opinions and prior administrative findings. (Pl's Statement of Specific Errors, 15–20, ECF No. 12.) The undersigned considers Plaintiff's first contention of error and finds that is has merit. An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[4] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). An ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. *Id.* When considering supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support a medical opinion, the more persuasive the ALJ should find the medical opinion. §§ 404.1520c(c)(1); 416.920c(c)(1). When considering consistency, the more

---

[4] Because Plaintiff's applications were filed in 2018, they are subject to regulations that govern applications filed after March 27, 2017.

consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. §§ 404.1520c(c)(2); 416.920c(c)(2). And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id.*

Plaintiff first contends that the ALJ erred when assessing limits opined by her neurologist, Dr. Woo, who treated her migraine headaches. (Pl's Statement of Errors, 15–18, ECF No. 12.) Dr. Woo authored two medical opinions about the impact of Plaintiff's migraines. The ALJ summarized Dr. Woo's first opinion, dated February 2019. The ALJ wrote as follows:

> The undersigned has also considered the February 13, 2019 statement by neurologist Dr. Woo. After noting he last saw the claimant on November 14, 2017, Dr. Woo noted the claimant has experienced two to three severe migraines a week despite treatment since in 2011. He also noted the claimant is unable to function and bed-bound during migraines two to three times a week. Dr. Woo also indicated the claimant's fine and gross manipulation, and gait was normal and that the claimant did not use an ambulatory aid (Ex. 13F).

(R. at 3471.) The ALJ then evaluated that 2019 opinion and found that she could not fully credit it. The ALJ wrote as follows.

> Dr. Woo has treated the claimant since 2015; thus, he had the benefit of a longitudinal perspective of the claimant's condition and symptoms before completing this form. However, he did not provide any information regarding specific functional limitations, if any, as a result of her migraine headaches that could be evaluated. Nor did he indicate how the claimant's subjective symptoms and his examination findings would affect her ability to function in a work setting. As such, the undersigned cannot find Dr. Woo's statement persuasive.

(*Id.* at 3471–72.) Plaintiff does not appear to challenge the ALJ's assessment of Dr. Woo's 2019 opinion.

The ALJ also summarized Dr. Woo's second opinion, dated September 2020, writing as follows:

> Dr. Woo subsequently completed a Neurology Specialist Medical Statement on September 14, 2020, indicating the claimant's prognosis was poor as her migraine headaches had not improved despite multiple standard medications and physical therapy. Dr. Woo further noted her symptoms included nausea, vomiting,

7

> phonophobia, photophobia, throbbing pain, alteration of awareness, mental confusion, inability to concentrate, mood changes, exhaustion, malaise, vertigo, numbness, visual disturbances, tunnel vision, weight change, impaired sleep, loss of taste, and impaired appetite, weight change, pain worse with activity. He also indicated her pain worsened with activity and caused avoidance of activity. Dr. Woo indicated the claimant experienced 2-4 headaches per week or 8-16 per month, typically lasting 24-72 hours each. While he further noted that in addition to medications, being in a dark room or quiet place, hot and/or cold packs, and Epsom salt baths made her headaches better, he indicated her prognosis was poor as her migraine headaches had not improved despite multiple standard medications and physical therapy. Dr. Woo opined the claimant would generally be precluded from performing even basic work activities and need a break from the workplace during times she had a headaches. He further provided she will sometimes need to take unscheduled breaks to sit down quietly during a working day 50% of the time, and have to rest 24-72 hours (1-3 days) before returning to work. Moreover, he indicated the claimant's symptoms would likely be severe enough to interfere with attention and concentration needed to perform even simple work tasks 25% or more of the time on a typical workday. Finally, Dr. Woo opined the claimant had good days and bad days, and would likely be absent from work as a result of her headaches or treatment more than four days per month (Ex. 32F). as noted above, Dr. Woo has been treating the claimant since 2015.

(*Id*. at 3472) The ALJ then evaluated that 2020 opinion and found that it was only partly persuasive. The ALJ wrote as follows:

> [t]he undersigned finds his opinion not entirely persuasive, as the evidentiary record, to which he did not have access, including the claimant's denial of headaches and headache symptomology on several occasions, as noted above.

(R. 3472.)[5]

The ALJ's terse statement for why she found Dr. Woo's opinion not entirely persuasive is insufficient. The ALJ's decision provides no explanation at all for how she considered the consistency factor[6] in connection with Dr. Woo's opinion, as she was required to do. The

---

[5] It appears that the ALJ intended to write that the evidentiary record, to which Dr. Woo did not have access, "included" Plaintiff's denial of headaches and headache symptomology, instead of "including" Plaintiff's denial of the same.

[6] Plaintiff does not challenge the ALJ's articulation of the supportability factor. (*See* Pl's Statement of Specific Errors, 15–18, ECF No. 12.)

Defendant argues that because the ALJ referenced earlier sections of her report where Plaintiff denied headaches, that the ALJ's discussion of the consistency factor in her consideration of Dr. Woo's opinions was sufficient. (Def's Mem. in Opp., ECF No. 14.) It is true that an ALJ's decision must be read as a whole, *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851-52 (6th Cir. 2020), and the ALJ's opinion does identify isolated instances in the record where Plaintiff denied headaches and headache symptomology. (R. 3463–64 (noting that Plaintiff had denied headaches on April 6, 2016, February 20, 2018, June 5, 2021, June 10, 2021, and October 10, 2022).) But in the absence of an explicit discussion of the consistency factor, the Court is left to speculate as to how the ALJ weighed those instances against the consistent records from Dr. Woo documenting Plaintiff's complaints of, and treatment for, migraines. It is also true, as Defendant points out, that Plaintiff kept a headache diary, and the ALJ provided several examples of instances where Plaintiff presented for treatment and appeared in no acute distress on the same days she recorded having a migraine in her diary. (Def's Mem. in Opp. 7, ECF No. 14.) However, the ALJ's discussion of Dr. Woo's opinion does not mention those discrepancies as a reason for discounting Dr. Woo's opinion.

  In short, the ALJ did not sufficiently discuss the consistency factor when considering Dr. Woo's opinions. As a result, the Court is unable to meaningfully review the ALJ's RFC determination. For these reasons, remand is warranted. This finding obviates the need for in-depth analysis of Plaintiff's remaining assignments of error. Thus, the undersigned need not, and does not, resolve the alternative bases Plaintiff asserts support reversal and remand.

## V.   CONCLUSION

  In sum, for the foregoing reasons, the undersigned **RECOMMENDS** that the Court sustain Plaintiff's statement of error and **REVERSE** and **REMAND** this case to the Commissioner for further consideration.

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this R&R, that party may, within fourteen (14) days of the date of this R&R, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the R&R or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the R&R. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE